# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                     No. CR 07-1180 JB

OSCAR MOYA-MATUTE,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objection to the Pre-Sentence Report and Motion for Variance Pursuant to 18 U.S.C. § 3553(a), filed February 10, 2008 (Doc. 51)("Defendant's Objection"). The Court held a sentencing hearing on February 25, 2008. The primary issue is whether Defendant Oscar Moya-Matute's misdemeanor conviction for domestic battery, in violation of Indiana Code § 35-42-2-1.3, is a crime of violence as defined in 18 U.S.C. § 16.[1] Because Moya-Matute's conviction for domestic battery under Indiana law contained as an element the use of force against another person, it qualifies as a crime of violence under U.S.S.G. § 2L1.2, and the Court will overrule Moya-Matute's objection to enhancement of the offense level in paragraph 12 of his Presentence Investigation Report.

## FACTUAL BACKGROUND

According to the documents of conviction, on November 6, 2001, Moya-Matute pled guilty to domestic battery, a misdemeanor under Indiana Code §35-42-2-1.3. See Presentence Investigation Report ("PSR") ¶ 12 at 5, disclosed February 6, 2008. The state court subsequently

---

[1] Moya-Matute also requests a variance. See Defendant's Objection at 1, 4-8. The Court will consider Moya-Matute's variance request at a later date after further argument.

sentenced Moya-Matute to 365 days, with 361 days suspended.  See id.  Moya-Matute was

convicted of illegal re-entry in the Southern District of Texas one year after being convicted of

domestic battery.  See PSR ¶¶ 20-21, at 6-7. According to the Information filed against Moya-

Matute:

> On or about May 17, 2001, in Marion County, State of Indiana, the following named
> defendant, Oscar Moya, did knowingly in a rude, insolent or angry manner touch,
> Ingris Rivera, another person who is or was the spouse of the Defendant, is or was
> living as if a spouse of the Defendant, or has a child in common with the Defendant,
> and further that said touching resulted in bodily injury to the other person,
> specifically slapped her in the face and punched her in the leg.

Addendum to the PSR (dated February 14, 2008) at 3, Information (filed May 18, 2001).

## PROCEDURAL BACKGROUND

On January 14, 2008, Moya-Matute pled guilty, without a plea agreement, to a one-count

indictment charging a violation of 8 U.S.C. §§ 1326(a) and (b), which make it illegal for a removed

alien to re-enter the United States.  See Plea Minute Sheet, filed January 14, 2008 (Doc. 49).  After

he pled guilty, a United States Probation Officer prepared the PSR.  See PSR.

Paragraph 12 of the PSR assesses an 8-level increase in offense level based on the Indiana

conviction for misdemeanor battery, in violation of Indiana Code § 35-42-2-1.3.  See PSR ¶ 12, at

4-5.  According to the PSR, Moya-Matute's misdemeanor battery is an aggravated felony, because

it is a crime of violence, as defined in 18 U.S.C. § 16.  See PSR ¶12, at 4.

Moya-Matute's adjusted offense level is 14, after accounting for a 2-level reduction for his

acceptance of responsibility.  See PSR ¶¶ 10-18, at 4-6.  His criminal history category is II.  See id.

¶ 22, at 7.  A criminal history category of II and an adjusted offense level of 14 results in a Guideline

imprisonment range of 18 to 24 months.  See id. at 12.

On February 10, 2008, Moya-Matute filed an objection to the PSR and submitted a

sentencing memorandum, contending that his prior domestic-battery conviction was improperly classified as an "aggravated felony" and arguing that he was improperly assessed an 8-level enhancement to the base offense level of 8.  See Defendant's Objection at 1-4.  Moya-Matute requests that the Court strike the 8-level increase assessed in paragraph twelve of the PSR.  See id. at 4.  Moya-Matute requests that his offense level be increased only by 4 levels, because of the prior felony conviction for re-entry of a previously deported alien, for a total offense level of 12.  See id. After a 2-level reduction for acceptance of responsibility, his adjusted offense level would be 10. See id.  With an offense level of 10 and a criminal history of II, Moya-Matute's Guideline range would be 8 to 14 months.  See id.

The United States opposes the objection.  See United States' Response to Defendant's Objection to the Presentence Report and Motion for Variance Pursuant to 18 U.S.C. § 3553, filed February 14, 2008 (Doc. 53)("Response").  The United States acknowledges that Moya-Matute's conviction for domestic battery under Indiana law is a misdemeanor.  See id. at 3.  It contends, however, that the offense is not precluded from being an aggravated felony under 8 U.S.C. § 1101(a)(43).  See Response at 3.  The United States argues that Moya-Matute's conviction satisfies the definition of "crime of violence" contained in 18 U.S.C. § 16(a).  Response at 4.  The United States contends that the Indiana Code that Moya-Matute violated requires the use of physical force as an element and thus satisfies the requirements of 18 U.S.C. § 16(a).  See Response at 4.

The Court held a hearing on February 25, 2008.  Moya-Matute argued that, for his Indiana conviction to constitute a crime of violence, "it must contain the use of force . . . [or] attempted use of force as an element as described in [U.S.S.G. §] 2L1.2."  Transcript of Hearing at 3:21-23 (taken

February 25, 2008)("Tr.")(Johnson).[2]  Moya-Matute contended that the charging document only described "the action that [he] allegedly took but [did] not describe the bodily injury that resulted to the alleged victim." Id. at 6:2-4 (Johnson).  Moya-Matute contended that the Court "needs to look at the resulting injury to the victim." Id. at 7:23-24 (Johnson).

Moya-Matute sought to distinguish United States v. Griffith, 455 F.3d 1339 (11th Cir. 2006), by arguing that it was analyzing whether a domestic-violence conviction was a crime of violence under U.S.S.G. § 4B1.1, which is broader than U.S.S.G. § 2L1.2(b)(1)(C).  See Tr. at 6:12-22 (Johnson).  Moya-Matute conceded, however, that Flores v. Ashcroft, 350 F.3d 666 (7th Cir. 2003), examined only Indiana Code § 35-42-2-1, not domestic battery.  See Tr. at 7:8-21 (Court & Johnson).  Moya-Matute asserted that: (i) his Indiana conviction is not categorically a crime of violence under 18 U.S.C. § 16, and (ii) if the Court were inclined to find it a crime of violence, then under the modified categorical approach the United States has not put forth sufficient evidence to support its status as a crime of violence because it is a result-oriented statute under United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005).  See Tr. at 16:3-17 (Johnson).

Specifically, Moya-Matute contended that the United States must prove the resulting bodily injury and that his actions of slapping or punching the victim in the leg is not a description of the victim's bodily injury, and thus cannot constitute a crime of violence.  See id. at 16:22-17:16 (Court & Johnson).  The United States countered that 18 U.S.C. § 16(a) does not discuss the degree of harm to the victim.  See Tr. at 18:17-18 (Brawley).  The United States noted that "[i]t also doesn't say anything about the degree of force or whether that force [has to] be violent . . . ." Id. at 18:20-22 (Brawley).

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

On March 11, 2008, the Court entered a Minute Order stating that "[t]he parties may, if they wish, submit to the Court additional briefing, by formal pleading or by letter, regarding the relevance, if any, of United States v. Rodriguez-Enriquez, No. 07-2033, 2008 WL 624433 (10th Cir. March 10, 2008) to the sentencing in this matter, by the close of business on Friday, March 14, 2008."

On March 13, 2008, the Defendant filed supplemental argument.  See Defendant's Supplemental Argument, filed March 13, 2008 (Doc. 57)("Moya-Matute's Supplemental Argument").  Moya-Matute argues that the United States Court of Appeals for the Tenth Circuit's recent opinion in United States v. Rodriguez-Enriquez, No. 07-2033, 2008 WL 624433 (10th Cir. March 10, 2008), "sheds little light on the issue before this [C]ourt in [his] case, except for the fact that the [Tenth Circuit's] analysis seems to hint that [it] requires the use of physical force, for purposes of section 2L1.2, to be violent in nature."  Moya-Matute's Supplemental Argument, at 3.  Moya-Matute notes that, in United States v. Rodriguez-Enriquez, the Tenth Circuit held "that the sentencing court's determination of whether an offense carries with it the requisite degree of physical force . . . does not depend on the effect resulting from the physical force."  Id.  While Moya-Matute "recognizes that is contrary to one of the arguments he posited to this court, he maintains that he does not affect his argument that the Indiana statute at issue here does not constitute a crime of violence."  Id.  Moya-Matute argues that the Tenth Circuit "has defined the 'Force' necessary to make an offense a crime of violence as 'synonymous with destructive or violent force.'"  Id. at 2 (quoting United States v. Venegas-Ornelas, 348 F.3d 1273, 1275 (10th Cir. 2003)).  Moya-Matute also contends that in United States v. Quijada, 146 Fed.Appx. 958 (10th Cir. 2005), the Tenth Circuit "discussed the issue of force necessary for an offense to qualify as a crime of violence. While the [Tenth Circuit] engaged in an academic discussion, it did recognize that the

-5-

[Tenth Circuit] has generally said that 18 U.S.C. § 16 requires "destructive or violent force."' Moya-Matute's Supplemental Argument at 2 (quoting United States v. Quijada, 146 Fed.Appx. at 965)(stating "[w]hile we have generally said § 16 requires "destructive or violent" force, we have also held, in a sexual abuse case, that § 16 does not reference physical force in terms of a particular nature or severity").

On March 14, 2008, the United States submitted supplemental briefing regarding United States v. Rodriguez-Enrique.  See United States' Supplemental Briefing Regarding United States v. Rodriguez-Enriquez, 2008 WL 624433 (10th Cir. March 10, 2008)("United States' Supplemental Briefing").  The United States indicates that its counsel "has reviewed the Rodriguez-Enriquez decision and is of the opinion that the decision does not change the arguments previously made by the government in regard to the instant case." Id. ¶ 1, at 1.  The United States argues that the United States v. Rodriguez-Enriquez "bolsters" its argument.  Id. ¶ 4, at 2.  The United States contends that United States v. Rodriguez-Enriquez "thus foreclos[es] the arguments presented at the February 28, 2008 sentencing hearing when counsel for the Defendant cited the Perez-Vargas case." Id. ¶ 5, at 2.

## LAW REGARDING A "CRIME OF VIOLENCE"

Section 2L1.2(a) of the United States Sentencing Guidelines provides for a base-offense level of 8 for re-entry after deportation.  See U.S.S.G. 2L1.2(a).  Additionally, 8 U.S.C. § 1101(48)(B) provides: "Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." Id.  U.S.S.G. § 2L1.2(b)(1)(A)(ii) requires a 16-level enhancement "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of

violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The application notes to U.S.S.G. § 2L1.2 define a "crime of violence."

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, <u>or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another</u>.

U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)(emphasis added). The commentary to § 2L1.2 explains that the term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43).  <u>See</u> U.S.S.G. § 2L1.2 cmt. app. n. 3(A)("For purposes of subsection (b)(1)(C), "aggravated felony" has the meaning given that term in 8 U.S.C. § 1101(a)(43), without regard to the date of conviction for the aggravated felony."). 8 U.S.C. § 1101(a)(43)(F) defines "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."  <u>Id.</u>  Congress defined the phrase "crime of violence in section 16 of Title 18" to mean:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

In a series of cases, the Supreme Court of the United States has provided guidance to sentencing courts on how to determine whether a defendant has been convicted of a "violent felony" under the Armed Career Criminal Act ("ACCA").   In the first case, <u>Taylor v. United States</u>, 495 U.S. 575 (1990), the Supreme Court considered whether sentencing courts may examine evidence beyond the statutory definitions of a conviction to determine if it satisfies the predicate-crime

requirement.  See id. at 600.  Recognizing that states often employ varying definitions for crimes, the Supreme Court held that sentencing courts must use the "categorical approach" in determining whether a state conviction for "burglary" constitutes an ACCA predicate offense, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions. Id.

Furthermore, in United States v. Sanchez-Garcia, 501 F.3d 1208 (10th Cir. 2007), the Tenth Circuit held that, "[t]o determine whether a prior offense is a crime of violence under § 16(b), we apply the categorical approach outlined in Taylor v. United States." 501 F.3d at 1211 (internal citations and quotations omitted).  Under this approach, the Tenth Circuit examines "only the elements of the statute of conviction and disregard[s] the specific factual circumstances underlying the defendant's prior offense." United States v. Sanchez-Garcia 501 F.3d at 1211 (citing United States v. Lucio-Lucio, 347 F.3d 1202, 1204 (10th Cir. 2003).  "Accordingly, for a prior offense to be a crime of violence under § 16(b), the 'substantial risk' of 'physical force' must inhere in the elements of the prior offense rather than from the specific conduct in which the defendant engaged." United States v. Sanchez-Garcia 501 F.3d at 1211 (citing United States v. Frias-Trujillo, 9 F.3d 875, 877 (10th Cir. 1993)("There is no indication that Congress intended that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case.")(internal quotations omitted).

While the court is prohibited from examining the underlying factors of the charged crime, it "may take into account certain records of the prior conviction, such as the charging document and comparable judicial records, if the statutory definition of the prior offense is 'ambiguous on its face because it reaches different types of conduct under different sets of elements.'" United States v. Sanchez-Garcia 501 F.3d at 1211 (quoting United States v. Venegas-Ornelas, 348 F.3d 1273, 1275

n.1 (10th Cir. 2003)). This examination does not involve "a subjective inquiry as to whether [the] particular factual circumstances [underlying the conviction] involve a risk of violence." McCann v. Rosquist, 185 F.3d 1113, 1117 n.4 (10th Cir. 1999), vacated on other grounds, 529 U.S. 1126. Rather, the court "simply examine[s] these documents to determine which 'part of the statute was charged against the [d]efendant' and thus 'which portion of the statute to examine on its face.'" United States v. Sanchez-Garcia 501 F.3d at 1211 (quoting United States v. Venegas-Ornelas, 348 F.3d at 1275 n.1.)

The purpose of the categorical approach is to avoid conducting "a fact finding inquiry, thereby sparing [the sentencing court] from conducting mini-trials on prior offenses which have already been adjudicated." United States v. Austin, 426 F.3d 1266, 1270 (10th Cir. 2005). See Taylor v. United States, 495 U.S. at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting."). Under the categorical approach, courts should look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. at 600. Sentencing courts, moreover, should steer clear of the "exact definition or label" of the conviction, and instead should focus on the "basic elements" of the crime of conviction. Id. at 599. If the statutory elements are consistent with the generic elements of a crime of violence, then the conviction satisfies a violent felony. See id. at 599-600.

In three subsequent cases, the Supreme Court has reaffirmed this categorical approach. In Shepard v. United States, 544 U.S. 13 (2005), the Supreme Court applied the categorical approach for prior convictions based on guilty pleas and not only on convictions after a trial. See id. at 23. And recently, in James v. United States, 127 S.Ct. 1586 (2007), the Supreme Court reaffirmed the categorical approach under the ACCA, applying it to convictions for attempted burglary. See id.

-9-

at 1593-94.  In <u>James v. United States</u>, the Supreme Court reasoned that the categorical approach does not require that "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony."  <u>Id.</u> at 1597.

> [T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury . . . . But that does not mean that the offense . . . [is] categorically nonviolent.

<u>Id.</u>

In <u>United States v. Leocal</u>, 543 U.S. 1 (2004), the Supreme Court provided guidance on how to determine whether an offense is a crime of violence.  The Supreme Court in <u>United States v. Leocal</u> first directed courts to look at the language of the statute of conviction.  <u>See</u> 543 U.S. at 8. Courts must then determine whether the underlying statute has "the use of physical force against the person or property of another."  <u>Id.</u> at 11.

In a "narrow range of cases," however, the Supreme Court authorizes looking beyond the statutory elements of a conviction.  <u>Taylor v. United States</u>, 495 U.S. at 602.  First, "where a statute is ambiguous (i.e., reaches different types of conduct) and a defendant's conviction followed a jury trial, the court may look to charging documents and jury instructions to determine if the actual offense the defendant was convicted of qualifies as a crime of violence."  <u>United States v. Moore</u>, 420 F.3d 1218, 1220 (10th Cir. 2005)(citing <u>Taylor v. United States</u>, 495 U.S. at 602).  Second, "[w]here the statute is ambiguous and the defendant was convicted by a guilty plea, the court can review the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  <u>United States v. Moore</u>, 420 F.3d at 1220 (citing <u>Shepard v. United States</u>, 544 U.S. at 16).

Generally, in determining whether a prior conviction was for a "crime of violence" under U.S.S.G. § 2L1.2, the "categorical approach" is used. United States v. Martinez-Hernandez, 422 F.3d 1084, 1086-87 (10th Cir. 2005). This categorical approach entails looking at "the elements of the [state] statute under which [the defendant] had been convicted," id. at 1086, to determine whether those elements require "the use, attempted use, or threatened use of physical force against the person of another," id.

In 2003, the Tenth Circuit explained that a sentencing court is to consider, in applying § 16(b), "whether a crime, by its nature, poses a substantial risk that physical force may be used in the commission of an offense." United States v. Venegas-Ornelas, 348 F.3d 1273, 1275 (10th Cir. 2003), cert. denied, 543 U.S. 986 (2004). The Tenth Circuit stated, "'[f]orce,'" as used in the definition of a "crime of violence," is "'synonymous with destructive or violent force.'" Id. (quoting United States v. Landeros-Gonzales, 262 F.3d 424, 426 (5th Cir. 2001)). In United States v. Venegas-Ornelas, the Tenth Circuit held that a defendant's conviction under Colorado law for residential trespass was a crime of violence under § 16(b), and thus an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C). See 348 F.3d at 1278. The Tenth Circuit did "not . . . focus on the risk that force may result as an effect of the crime's commission," but instead on "the risk of force involv[ing] the risk of intentional, rather than accidental force." Id. at 1276-77. The Tenth Circuit noted that "there is a substantial risk that a defendant will intentionally use physical force in completing the crime of criminal trespass in a dwelling, whether the defendant entered the dwelling unlawfully or remained there unlawfully." Id. at 1277.

The recent case of United States v. Perez-Vargas, 414 F.3d 1282 (10th Cir. 2005), sets out the Tenth Circuit's analysis in cases with enhancements based on statutes that are unclear regarding the element of force. The Tenth Circuit in United States v. Perez-Vargas cited to the Supreme

Court's opinion in <u>Taylor v. United States</u>, and stated that, in applying <u>Taylor v. United States</u>, "if the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute to certain records of the prior proceeding such as the charging documents, the judgment, any plea thereto, and findings by the [sentencing] court." <u>United States v. Perez-Vargas</u>, 414 F.3d at 1284 (internal citations and quotations omitted) .  The Tenth Circuit in <u>United States v. Perez-Vargas</u> also quoted <u>Shepard v. United States</u>, stating that, "when determining whether a prior conviction resulting from a guilty plea is a violent felony, a court is limited to an examination of the language of the statute of conviction, and, if it is ambiguous, 'the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . or to some comparable judicial record of this information.'" <u>United States v. Perez-Vargas</u>, 414 F.3d at 1284 (quoting <u>Shepard v. United States</u>, 125 S.Ct. at 1262).

In <u>United States v. Perez-Vargas</u>  the defendant had a conviction for third-degree assault under Colorado law.  <u>See</u> 414 F.3d at 1283.  Under Colorado law, third-degree assault occurs "when the defendant knowingly or recklessly **causes bodily injury** to another person or with criminal negligence he **causes bodily injury** to another person by means of a deadly weapon."  <u>Id.</u> at 1285 (emphasis in original and internal quotations omitted).  The defendant contended that third-degree assault was not a crime of violence under U.S.S.G. § 2L1.2, because "the Guidelines focus on the **means** by which an injury occurs (the use of physical force)," while the Colorado statute "focuses on the **result** of a defendant's conduct, <u>i.e.</u>, bodily injury." <u>United States v. Perez-Vargas</u>, 414 F.3d at 1285 (emphasis in original).

The Tenth Circuit in <u>United States v. Perez-Vargas</u> noted that the Colorado statute allowed for third-degree assaults that would not use or threaten the use of physical force, such as "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an

accident, or intentionally exposing someone to hazardous chemicals." Id. at 1286.  Because the Colorado statute "does not necessarily include the use or threatened use of force as required by the Guidelines[,] [a] prior conviction for third degree assault in Colorado  . . . is not categorically a crime of violence under U.S.S.G. § 2L1.2." Id. at 1287.

In United States v. Quijada, No. 04-2201, 2005 WL 2093036 (10th Cir. August 31, 2005), the defendant argued that the district court improperly characterized two prior convictions as crimes of violence without considering the relevant Massachusetts assault-and-battery statute and, instead, relied on the underlying facts cited in the presentence report.  See id. at *2.  He argued that the district court should have strictly applied the requisite categorical approach and looked only at the statutory elements, which demonstrated a conviction for assault and battery may include a nonviolent, slight touch, which he contended could not be characterized as a crime of violence under U.S.S.G. § 2L1.2(b)(1).  See 2005 WL 2093036 at *4.  In sum, the defendant's argument in United States v. Quijada centered on the degree or amount of force necessary to constitute a crime of violence, which he contended must be a violent force.

The Tenth Circuit in United States v. Quijada noted that, under Massachusetts common law, "[a]n assault and battery is the intentional and unjustified use of force upon the person of another, however slight."  2005 WL 2093036 at *4 (citing Commonwealth v. McCan, 277 Mass. 199, 178 N.E. 633, 634 (1931)).  Applying § 2L1.2(b)(1)(A), the Tenth Circuit stated that it is apparent that "force" is an element of the Massachusetts statute.  Commonwealth v. McCan, 277 Mass. at 200, 178 N.E. 633 at 634.  The United States suggested that the use of any "force" is sufficient to meet the § 2L1.2 definition, because it does not quantify the amount of force necessary.  See 2005 WL 2093036 at *4.

The Tenth Circuit in United States v. Quijada acknowledged that it had not yet construed the

amended definition of a "crime of violence" under U.S.S.G. § 2L1.2 to determine the degree, if any, of the use of threat of use of force necessary to constitute a crime of violence. 2005 WL 2093036 at *6. At that point of its discussion, the Tenth Circuit dropped a footnote, and discussed <u>United States v. Perez-Vargas</u>. <u>See</u> 2005 WL 2093036 at *4 n.2. In that footnote, the Tenth Circuit explained that the statute at issue in <u>United States v. Perez-Vargas</u> "did not focus on physical force, but instead focused on the result of the defendant's conduct, stating third degree assault occurs when the defendant causes bodily injury to another person." <u>United States v. Quijada</u>, 2005 WL 2093036 at *4 n.2. The Tenth Circuit distinguished the Massachusetts statute at issue in <u>United States v. Quijada</u> by noting that, "unlike the Colorado statute in [<u>United States v. Perez-Vargas</u>], Massachusetts common law specifically focuses on physical force, stating: "assault and battery is the intentional and unjustified use of force upon the person of another, however slight . . . ." <u>United States v. Quijada</u>, 2005 WL 2093036 at *4 n.2 (internal quotations omitted). The Tenth Circuit concluded: "As a consequence, <u>Perez-Vargas</u> gives no insight on the degree of force required. It also does not analyze the § 2L1.2 definition in terms of either § 16 or § 4B1.1, as raised by the parties and discussed hereinafter." <u>United States v. Quijada</u>, 2005 WL 2093036 at *4 n.2

The Tenth Circuit in <u>United States v. Quijada</u> noted, however: "Thus far, we have only discerned that 'intent' to use, or threaten to use, force is required under § 2L1.2(b)(1)(A)." 2005 WL 2093036 at *4 (citing <u>United States v. Torres-Ruiz</u>, 387 F.3d 1179, 1183-87 (10th Cir. 2004)(relying in part on <u>United States v. Lucio-Lucio</u>, 347 F.3d 1202, 1204-1206 (10th Cir. 2003)). On the other hand, the Tenth Circuit stated : "While we have not definitively determined whether the amended § 2L1.2 definition is more comparable to either § 16 or § 4B1.1, we have recognized a distinction between the 'risk of physical injury,' under the § 4B1.2(a)(2) definition, and the risk of 'physical force . . . in the course of committing the offense,' under the 18 U.S.C. § 16(b)

definition, the latter of which we have said is less broad and requires 'destructive or violent force.'"
2005 WL 2093036 at *7 (citing United States v. Venegas-Ornelas, 348 F.3d at 1275-77 & n.2).  The
Tenth Circuit also noted, however: "While we have generally said § 16 requires 'destructive or
violent' force, we have also held in a sexual abuse case, that § 16 does not reference physical force
in terms of a particular nature or severity."  2005 WL 2093036 at *7 (citing McCann v. Byron L.
Rosquist, D.C., P.C., 185 F.3d 1113, 1120-21 (10th Cir. 1999)(holding that sexual abuse defined
under a Utah statute as nonconsensual sexual touching of another is a form of assault and battery,
and "implicates substantial risk of physical force" constituting a crime of violence), cert. granted,
judgment vacated on other grounds, 529 U.S. 1126 (2000)).  The Tenth Circuit further noted that,
"in ascertaining whether § 2L1.2(b)(1)(A) requires 'intent' to use 'force,' [it has] relied on both the
§ 16 and § 4B1.2 definitions for guidance."  2005 WL 2093036 at *8 (citing United States v. Torres-
Ruiz, 387 F.3d at 1185-87).

     In United States v. Quijada, the Tenth Circuit noted that there was a split in the circuits over
whether the same Massachusetts statute, and a similar complaint, satisfied U.S.S.G. § 4B1.2's
definition.  See 2005 WL 2093036 at *7.  In United States v. Mangos, 134 F.3d 460 (1st Cir. 1998),
the United States Court of Appeals for the First Circuit held that any prior conviction under the
Massachusetts statute, even if for nonharmful assault and battery, is a crime of violence.  See 134
F.3d at 464.  In support, the First Circuit reasoned that, "[u]nder the Sentencing Guidelines, the term
'crime of violence' is not limited to those crimes for which violence is a necessary element, but
instead extends to any crime which, 'under § 4B.2,' 'otherwise involves conduct that presents a
serious potential risk of physical injury to another.'"  134 F.3d at 464 (quoting § 4B1.2(a)(2)).  In
so concluding, the First Circuit acknowledged that the Massachusetts statute does not identify
violence or use of force as an essential element of the crime, as statutorily defined, but held that

violence, the use of force, or serious risk of physical harm are all likely to accompany assault and battery.  See 134 F.3d at 464.  In United States v. Santos, 363 F.3d 19 (1st Cir. 2004), cert. denied, 544 U.S. 923 (2005), after applying the categorical approach, and then looking beyond the statutory and common-law definition, the First Circuit looked at the complaint, which alleged the defendant did "assault and beat" the victim, and held that such a characterization also placed the offense in the harmful-battery category, thereby meeting the definition of a crime of violence under § 4B1.2.  363 F.3d at 23-24.  But see United States v. Jones, 235 F.3d 342, 347-48 (7th Cir. 2000)(determining that physical force is not a necessary element of an offense under Mass. Gen. Laws. ch. 265, § 13A).

Thus, if a sentencing court determines from the statutory definitions of convictions that the crime is a felony and includes the use or threatened use of force, the inquiry ends, and the crime is categorized as one of violence.  See United States v. Taylor, 495 U.S. at 600-601. If the statute is ambiguous, the supporting documents approved in United States v. Taylor and Shepard v. United States are reviewed to determine if there was a qualifying conviction for a crime involving the use or threatened use of violence.  See Shepard v. United States, 125 S.Ct. at 1259; United States v. Dwyer, 245 F.3d 1168, 1171 (10th Cir. 2001).  While United States v. Taylor and Shepard v. United States involved burglary convictions and pleas, the Tenth Circuit has applied the categorical approach to a broader array of issues.  See, e.g., United States v. Moore, 420 F.3d at 1220 (applying categorical approach to U.S.S.G. § 4B1.2 "crime of violence" enhancement); United States v. Begay, 470 F.3d 964, 967-75 (10th Cir. 2005)(applying categorical approach in holding that a DUI is a "violent felony" under the ACCA), cert. granted, 128 S.Ct. 32 (2007); United States v. Harris, 447 F.3d 1300, 1304-1305 (10th Cir. 2006)(applying categorical approach to ACCA "separateness of prior crimes" inquiry); United States v. Nevels, 490 F.3d 800, 807-808 (10th Cir. 2007)(applying categorical approach to juvenile convictions).

In <u>United States v. Saenz-Mendoza</u>, 287 F.3d 1011 (10th Cir. 2002), the Tenth Circuit held that an illegal re-entry defendant's prior Utah conviction for child abuse-cruelty toward child, which was classified as a Class A misdemeanor, was an "aggravated felony" as defined by U.S.C. § 1101(a)(43)(F), because the defendant received one year of imprisonment.  See <u>United States v. Saenz-Mendoza</u>, 287 F.3d at 1014 (stating that "[a]ll § 1101(a)(43)(F) requires is a crime of violence for which the term of imprisonment is at least one year.").

Recently, the Tenth Circuit explained that a conviction for assault two (drugging a victim), under Colorado law, is not a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See <u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at * 1.  Under Colorado law

> [a] person commits the offense of assault two (drugging a victim) if "[f]or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or <u>mental impairment</u> or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm."

2008 WL 624433 at * 1 (quoting Colo. Rev. Stat. Ann. § 18-3-203(1)(e))(emphasis in original).  The Tenth Circuit explained: "Even if we were to agree that drugging involves the use of <u>force</u>, we must still decide what is added by the adjective <u>physical</u>."  <u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at * 2 (emphasis in original).  The Tenth Circuit "reject[ed] the view that the word <u>physical</u> relates to the effect of the force, because if the word has that meaning, it adds nothing to the Guideline definition of crime of violence."  <u>Id.</u> at *3 (emphasis in original).

The Tenth Circuit in <u>United States v. Rodriguez-Enriquez</u> decided that "the adjective <u>physical</u> must refer to the mechanism by which the force is imparted to the person of another."  <u>Id.</u> at *3 (emphasis in original).  The Tenth Circuit explored the meaning of physical force by asking:

> In what circumstances, then, are we likely to think of the force as being generated by <u>physical</u> means?  When someone is struck by a fist, a bat, a projectile, we have no difficulty in characterizing the force against the person as physical.  In those

instances the force on the victim is generated mechanically.  Kinetic energy from the
fist, bat, or projectile is transferred to the body of the victim.  Although the matter
is far from certain, the absence of colorable alternative meanings for <u>physical</u> suggest
that it is the presence of this mechanical impact that defines when force is physical.
In contrast, the effect of poison on the body is achieved by chemical action, not by
mechanical impact.

<u>Id.</u> at * 4 (emphasis in original).  The Tenth Circuit revisited its opinion in <u>United States v. Perez-Vargas</u> and noted that it had previously observed that "'intentionally exposing someone to hazardous chemicals'" would not be a crime of violence.  <u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at * 4 (internal quotations omitted)(quoting <u>United States v. Perez-Vargas</u>, 414 F.3d 1282, 1286-87 (10th Cir. 2005)).

The Tenth Circuit noted in <u>United States v. Rodriguez-Enriquez</u> that, "[a]lthough there is no doubt that one could use physical force to drug someone, as by forcing a drink down the victim's throat, drugging by surreptitious means does not involve the use of physical force."  <u>Id.</u> at *5.  The Tenth Circuit explained that the Colorado statute criminalized "harm caused by the nonconsensual administration of a drug, substance or preparation [--] [t]he harm . . . caused by chemical action on the victim's body."  <u>Id.</u> at *4 (internal quotations omitted).  The Tenth Circuit concluded by noting that

> [a] sentencing judge may, for proper reasons, depart from the Guideline range; and under <u>Gall v. United States</u>, 128 S.Ct. 586 (2007), the judge has discretion to vary from that range.  In exercising that discretion the judge is not bound by what may seem to be an artificial distinction between shooting a victim and poisoning him.

<u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at * 5.

Two circuits have held that 18 U.S.C. § 16(b) requires that a crime of violence involve force that is violent in nature.  <u>See</u> <u>Solorzane-Patlan v. INS</u>, 207 F.3d 869, 875 n.10 (7th Cir. 2000)("We are of the opinion that the force necessary to constitute a crime of violence, must actually be violent in nature."); <u>United States v. Rodriguez-Guzman</u>, 56 F.3d 18, 20 n.8 (5th Cir. 1995)("We perforce

-18-

interpret 'force' to mean more than the mere asportation of some property of the victim. The clear import of defining a 'crime of violence' is that 'force' as used in the definition is synonymous with destructive or violent force."). In <u>Flores v. Ashcroft</u>, 350 F.3d 666 (7th Cir. 2003), the United States Court of Appeals for the Seventh Circuit analyzed Indiana's misdemeanor battery statute and determined that a conviction for Class A misdemeanor battery under Indiana law does not constitute a crime of violence. <u>See</u> 350 F.3d at 672. The Honorable Frank H. Easterbrook, United States Court Judge, explained that:

> Section 16(a) refers to the "use of physical force". Every battery entails a touch, and it is impossible to touch someone without applying some force, if only a smidgeon. Does it follow that every battery comes within § 16(a)? No, it does not. Every battery involves "force" in the sense of physics or engineering, where "force" means the acceleration of mass. A dyne is the amount of force needed to accelerate one gram of mass by one centimeter per second per second. That's a tiny amount; a paper airplane conveys more. (A newton, the amount of force needed to accelerate a kilogram by one meter per second per second, is 100,000 dynes, and a good punch packs a passel of newtons.) Perhaps one could read the word "force" in § 16(a) to mean one dyne or more, but that would make hash of the effort to distinguish ordinary crimes from violent ones. How is it possible to commit any offense without applying a dyne of force? Section 16(a) speaks of "physical force against the person or property of another" (emphasis added). Cashing a check obtained by embezzlement requires lots of dynes to move the check into an envelope for mailing. Suppose someone finds a set of keys that the owner dropped next to his car and, instead of taking them to a lost and found, turns the key in the lock and drives away. One would suppose that to be a paradigm non-violent offense, yet turning the key in the lock requires "physical force" (oodles of dynes) directed against the property (the auto) of another.
>
> To avoid collapsing the distinction between violent and non-violent offenses, we must treat the word "force" as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature -- the sort that is intended to cause bodily injury, or at a minimum likely to do so.

<u>Id.</u> at 672.

In <u>Flores v. Ashcroft</u>, the Seventh Circuit noted that "Indiana follows the common-law rule under which any contact, however slight, may constitute battery." <u>Id.</u> at 669. Under Indiana law,

serious bodily injury makes the misdemeanor battery a Class C felony.  See id. at 670.  "It follows, Indiana's judiciary concluded, that any physical hurt satisfies [the statute].  So if the paper airplane inflicts a paper cut, or a squeeze of the arm causes a bruise, the aggressor has committed a Class A misdemeanor (provided that the act was rude, angry, or insolent).  It is hard to describe any of this as 'violence.'"  Id.  The problem the court encountered in Flores v. Ashcroft was that "[t]he immigration officials ask[ed it] to examine what Flores actually did, not just the elements of the crime to which he pleaded guilty."  Id.

The Honorable Terence T. Evans, United States Court Judge, concurred in Flores v. Ashcroft because while he believed that "the result . . . reach[ed], though correct on the law, [wa]s divorced from common sense."  Id. at 672 (Evans, J., concurring).  Judge Evans asked:

> If it is permissible to look to Flores' "real conduct" to determine if the person he beat was his wife rather than some stranger, why does it not make perfectly good sense to allow an immigration judge to look at what he really did in other respects as well, rather than restrict the judge to a cramped glance at the "elements" of a cold statute?

Id. at 673.  Judge Evans believed that a "common-sense review . . . should lead one to conclude that Flores committed a 'crime of domestic violence.'"  Id.  "Simply put, by any commonly understood meaning of that term, that's exactly what he did, and that should be the end of the story."  Id.

In United States v. Griffith, 455 F.3d 1339 (11th Cir. 2006), the defendant pleaded guilty to simple battery, a misdemeanor under Georgia law.  See 455 F.3d at 1340.  The United States Court of Appeals for the Eleventh Circuit noted that the first count of the prior indictment was for Griffith "making contact of an insulting and provoking nature to [the victim], his wife, by hitting her and that his conviction on the second count was for intentionally making contact of an insulting and provoking nature to [the victim], his wife, by dragging her across the floor."  Id. (internal quotations omitted).  The issue facing the Eleventh Circuit was whether Georgia's simple-battery statute was

a crime that had as an element under the categorical approach the use or attempted use of force.  See

id. at 1341.  The Eleventh Circuit disagreed with Judge Easterbrook's analysis in Flores v. Ashcroft:

> Unlike the Seventh Circuit, we do not feel compelled to reach a result at war with common sense, particularly when doing so would require us to alter the plain language of what Congress has written. Like the Ninth Circuit in [United States v.] Belless, [338 F.3d 1063 (9th Cir. 2003)], the Seventh Circuit in Flores has essentially read into a statutory definition a word that is not there -- inserting "violent" before the words "physical force." If Congress had meant to say "violent physical force" it easily could have done so. By reading into a statutory provision a restrictive word in order to guard against an absurd result that it admits has little or no basis in the real world, the Flores court forced itself to what could be described as an absurd result in the case before it. In doing so, it produced a decision that supplies, in the words of the concurring judge, a good example for those who criticize our system of law (court decisions) as " 'not tethered very closely to common sense.' " Flores, 350 F.3d at 673 (Evans, J., concurring) (quoting from United States v. Cranley, 350 F.3d 617, 620 (7th Cir.2003)). We will stick to the common sense approach and result where we can, and here we can.

United States v. Griffith, 455 F.3d at 1345.

     In United States v. Quijada, the Tenth Circuit summarized the holding in Flores v. Ashcroft

and stated that the Tenth Circuit, "[i]n contrast . . . has suggested § 16 refers only to physical force

and that physical force of a particular nature or severity is not to be referenced."  146 Fed.Appx. at

967.  The Tenth Circuit noted that other circuits have also looked at the issue of what degree of

"force," if any, is required to constitute a "crime of violence" under various statutes and Guideline

definitions and have come to different conclusions.  Compare Chery v. Ashcroft, 347 F.3d 404, 408

(2d Cir. 2003)(holding "risk of the use of force" under 18 U.S.C. § 16 was inherent in Connecticut

sexual intercourse statute, so even though violence or force are not explicit elements of the statute,

a conviction under the statute constitutes a crime of violence and, in support, listing numerous other

circuit court sexual assault cases with similar holdings), and United States v. Nason, 269 F.3d 10,

16-18 (1st Cir. 2001)(holding Congress intended the phrase "physical force" incorporated into §

922(g)(9) to "encompass crimes characterized by the application of any physical force") with Singh

-21-

v. Ashcroft, 386 F.3d 1228, 1233-34 (9th Cir. 2004)(holding conviction under Oregon harassment statute which did not have element of use, attempted use, or threatened use of physical force did not constitute a crime of violence under 18 U.S.C. § 16, as the force necessary to constitute a crime of violence must actually be violent in nature).   The Tenth Circuit stated, however, that "the court has not fully construed the new § 2L1.2 definition," and other courts have provided inconsistent interpretations of that definition as well as decisions on the amount of force, if any, necessary to constitute a "crime of violence."  2005 WL 2093036 at *9.

Finally, the Tenth Circuit in United States v. Quijada stated that it could not say error, if any, effected the defendant's substantial rights.  See 2005 WL 2093036 at *9.  The Tenth Circuit noted that, even if the district court somehow erred in applying the 1998 conviction as a "crime of violence," the defendant had a prior conviction in 1993 for assault and battery with a deadly weapon that involved the use of a set of nunchucks on another person in violation of Mass. Gen. Laws. ch. 265, § 15A.  2005 WL 2093036 at *9 (footnotes omitted).   The Tenth Circuit "decline[d] to speculate further whether a prior conviction under Mass. Gen. Laws ch. 265, § 15A constitute[d] a 'crime of violence,' given [the defendant's] failure to carry his burden in asserting otherwise for the purpose of showing prejudicial error."  146 Fed.Appx. at 970 n.10.

## INDIANA CODE §§ 35-42-2-1, 35-42-2-1-3

Under Indiana law, a battery is committed by touching another in a rude, insolent or angry manner.  According to Indiana Code § 35-42-2-1:

> (a)     A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:

> (1)     a Class A misdemeanor if:

> (A)     it results in bodily injury to another person . . . .

Ind. Code § 35-42-2-1.  Indiana state cases indicate that very little contact is required to constitute a battery.  See Impson v. State, 721 N.E. 2d 1275, 1285 (Ind. Ct. App. 2000)("In order to establish the commission of battery, the State is required to show that a person knowingly or intentionally touched another person in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1. Any touching, however slight, may constitute battery."); Lewis v. State, 438 N.E. 2d 289, 294 (Ind. 1982)( "A battery is committed when one 'knowingly or intentionally touches another person in a rude, insolent or angry manner.' Ind. Code § 35-42-2-1 (Burns Supp.1982).  Any touching, however slight, is sufficient.").

> According to Indiana Code § 34-42-2-1.3, a domestic battery is committed when:
>
> (a) A person who knowingly or intentionally touches an individual who:
>
> (1) is or was a spouse of the other person;
>
> (2) is or was living as if a spouse of the other person as provided in subsection (c); or
>
> (3) has a child in common with the other person;
>
> in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

Ind. Code § 35-42-2-1.3.  The Indiana statute requires that one person "touch" another in a way that results in bodily injury.  See id.

## ANALYSIS

The United States Probation Office ("USPO") properly classified Moya-Matute's prior conviction of domestic battery as a crime of violence.  The Indiana domestic-battery statute is not a "crime of violence" per se.  Moreover, the charging documents demonstrate that use of force was involved in the domestic battery.  Because U.S.S.G. § 2L1.2 authorizes an enhancement for a crime

of violence, the USPO properly assessed an 8-level enhancement of Moya-Matute's offense level. Accordingly, the Court will overrule Moya-Matute's objection to the 8-level enhancement.

## I.   MOYA-MATUTE'S MISDEMEANOR CONVICTION CAN BE A CRIME OF VIOLENCE UNDER U.S.S.G. § 2L1.2(b)(1)(C).

U.S.S.G. § 2L1.2(b)(1)(C) provides for an 8-level enhancement if the defendant has previously been deported following a conviction for an aggravated felony. See U.S.S.G. § 2L1.2(b)(1)(C). Application Note 3 to U.S.S.G. § 2L1.2 explains that an aggravated felony "has the meaning given that term in 8 U.S.C. § 1101(a)(43), without regard to the date of the conviction for the aggravated felony." U.S.S.G. § 2L1.2 cmt. app. n. 3. Under 8 U.S.C. § 1101(a)(43)(F), an aggravated felony means "a crime of violence . . . as defined in section 16 of Title 18 . . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).

Moya-Matute's conviction under Indiana law must satisfy the definition in 18 U.S.C. § 16(a) to be a "crime of violence." The plain language of 18 U.S.C. § 16(b) refers to felony offenses, thus making subsection (b) largely irrelevant to the analysis in this case. Consequently, the Court must first look at Indiana Code § 35-42-2-1.3, and compare its elements with the definition of "crime of violence" in 18 U.S.C. § 16(a). Because Moya-Matute was convicted of a misdemeanor, only 18 U.S.C. § 16(a) matters in that analysis.

Moya-Matute was convicted in Indiana of domestic battery in 2001 for slapping his wife in the face and punching her leg. See PSR ¶ 12, at 5. For this crime, he received a sentence of 365 days imprisonment. See id. Moya-Matute now argues that this crime is not an "aggravated felony" for purposes of U.S.S.G. § 2L1.2 and that the USPO improperly calculated the total offense level of 14. See Motion at 4. Moya-Matute argues for a total offense level of 10, based on his prior felony conviction for illegal re-entry, and he essentially seeks a sentence of time-served. See id.

Moya-Matute's prior domestic battery under Indiana law is a misdemeanor, because the maximum sentence that can be imposed is one year.  <u>See</u> Ind. Code §§ 35-42-2-1.3, 35-50-3-2.  That Moya-Matute's prior offense is a misdemeanor, however, does not preclude it from being an aggravated felony.   <u>See</u> 8 U.S.C. § 1101(48)(B)(providing "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part."); <u>United States v. Saenz-Mendoza</u>, 287 F.3d at 1014 (stating that "[a]ll § 1101(a)(43)(F) requires is a crime of violence for which the term of imprisonment is at least one year.").  Moya-Matute's prior Indiana conviction is not precluded from being a "crime of violence" on the basis that the crime is a misdemeanor, because Moya-Matute received a sentence of one-year imprisonment.  <u>See</u> PSR ¶¶ 12, 20, at 5, 6.

## II.   INDIANA CODE § 35-42-2-1.3 QUALIFIES AS A "CRIME OF VIOLENCE" BECAUSE USE OF FORCE, ATTEMPTED USE OF FORCE, OR THREATENED USE OF FORCE IS NOT A REQUIRED ELEMENT.

U.S.S.G. § 2L1.2 states that a crime of violence "means . . . any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2, app. n. (B)(iii).  The crime of domestic battery under Indiana law requires a defendant to knowingly or intentionally touch a person in a rude, insolent, or angry manner that results in bodily injury.  <u>See</u> Ind. Code § 35-42-2-1.3.  Indiana law proscribes "the mechanism by which the force is imparted to the person of another" by requiring the touching be in a rude, insolent, or angry manner.  <u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at *3 (emphasis in original).

Moya-Matute relies upon Tenth Circuit discussion regarding what constitutes a crime of violence under 18 U.S.C. § 16(b) to argue that his conviction under Indiana law does not meet the

definition of a crime of violence.  See Moya-Matute's Supplemental Argument at 2.  Moya-Matute suggests that the Tenth Circuit "has defined the 'Force' necessary to make an offense a crime of violence as 'synonymous with destructive or violent force.'"  Id. at 2 (quoting United States v. Venegas-Ornelas, 348 F.3d at 1275).  Moya-Matute also contends that, in United States v. Quijada, the Tenth Circuit "discussed the issue of force necessary for an offense to qualify as a crime of violence. While the [Tenth Circuit] engaged in an academic discussion, it did recognize that the [Tenth Circuit] has generally said that 18 U.S.C. § 16 requires 'destructive or violent force.'"  Moya-Matute's Supplemental Argument at 2 (quoting United States v. Quijada, 146 Fed.Appx. at 965)(stating that, "[w]hile we have generally said § 16 requires 'destructive or violent' force, we have also held, in a sexual abuse case, that § 16 does not reference physical force in terms of a particular nature or severity").

In United States v. Venegas-Ornelas, the Tenth Circuit explained that "[f]orce, as used in the definition of a crime of violence, is synonymous with destructive or violent force."  348 F.3d at 1275.  The Tenth Circuit held that a defendant's conviction under Colorado law for residential trespass was a crime of violence under § 16(b), and thus an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C).  See 348 F.3d at 1275 (internal quotations omitted).  In United States v. Quijada, the Tenth Circuit noted that, "[w]hile [it] ha[s] not definitively determined whether the amended § 2L1.2 definition is more comparable to either § 16 or § 4B1.2, [it] ha[s] recognized a distinction between the risk of physical injury, under the § 4B1.2(a)(2) definition, and the risk of physical force . . . in the course of committing the offense, under the 18 U.S.C. § 16(b) definition, the latter of which we have said is less broad and requires destructive or violent force." 2005 WL 2093036 at *5 (internal quotations omitted)(citing United States v. Venegas-Ornelas, 348 F.3d at 1275-77 and n.2).

The Tenth Circuit "reject[s] the view that the word <u>physical</u> relates to the effect of the force, because if the word has that meaning, it adds nothing to the Guideline definition of crime of violence."  <u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433  at *3 (emphasis in original). The Tenth Circuit explained: "[T]he adjective <u>physical</u> must refer to the mechanism by which the force is imparted to the person of another."  <u>Id.</u> at *3 (emphasis in original).  The Tenth Circuit explored the meaning of physical force by asking:

> In what circumstances, then, are we likely to think of the force as being generated by <u>physical</u> means?  When someone is struck by a fist, a bat, a projectile, we have no difficulty in characterizing the force against the person as physical.  In those instances the force on the victim is generated mechanically.  Kinetic energy from the fist, bat, or projectile is transferred to the body of the victim.  Although the matter is far from certain, the absence of colorable alternative meanings for <u>physical</u> suggest that it is the presence of this mechanical impact that defines when force is physical. In contrast, the effect of poison on the body is achieved by chemical action, not by mechanical impact.

<u>Id.</u> at *4 (emphasis in original).  The Tenth Circuit did not characterize the force necessary to meet the statutory definition under 18 U.S.C. § 16(a) as "violent" in <u>United States v. Rodriguez-Enriquez</u>. Instead, the Tenth Circuit defined "physical" as "mechanical."  <u>United States v. Rodriguez-Enriquez</u>, 2008 WL 624433 at *4.  The Tenth Circuit held in <u>United States v. Rodriguez-Enriquez</u> that assault two (drugging a victim) under Colorado law is a not a crime of violence, because while "there is no doubt that one could use physical force to drug someone, as by forcing a drink down the victim's throat, drugging by surreptitious means does not involve the use of physical force."  2008 WL 624433 at *5.

Moya-Matute contends that, under <u>Flores v. Ashcroft</u> his conviction for domestic battery is not a crime of violence. Moya-Matute contends that characterizing Indiana's misdemeanor battery as a crime of violence reaches the level of absurdity that the Supreme Court rejected in <u>United States v. Leocal</u> and that the Seventh Circuit rejected in <u>Flores v. Ashcroft</u>. <u>See</u> Motion at 4 (stating that

"[t]o reach that conclusion would mean that actions such as throwing a paper airplane that touches another or throwing a spitball at another would constitute crimes of violence."). In <u>Flores v. Ashcroft</u>, the Seventh Circuit analyzed Indiana's misdemeanor-battery statute and determined that a conviction for misdemeanor battery under Indiana law does not constitute a crime of violence. <u>See Flores v. Ashcroft</u>, 350 F.3d at 672. The Seventh Circuit concluded that Indiana's simple-battery offense was not a crime of violence, because it was not "the sort that is intended to cause bodily injury, or at a minimum likely to do so." <u>Id.</u> at 672. The Eleventh Circuit has criticized <u>Flores v. Ashcroft</u> in <u>United States v. Griffith</u>, stating "the Seventh Circuit in <u>Flores</u> has essentially read into a statutory definition a word that is not there -- inserting "violent" before the words "physical force." If Congress had meant to say "violent physical force" it easily could have done so." 455 F.3d at 1345.

While the Court is inclined to agree with the Eleventh Circuit's analysis, and while the Court recognizes the Tenth Circuit has not spoken definitively on the subject, and, in the sexual crimes area, may have indicated otherwise, the Court nonetheless concludes that the Tenth Circuit's language in at least two cases has foreclosed the Court's ability to agree with the Eleventh Circuit in this case. 18 U.S.C. § 16(a) defines a crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." If the Court were deciding the issues on a clean slate, the Court would be inclined to find that the term "crime of violence" is a misnomer, that, under the statute, an offense which involves the use of physical force is a crime of violence, and that an offense need not be factually violent to satisfy 18 U.S.C. § 16(a). In <u>United States v. Quijada</u>, the Tenth Circuit suggested that force in a sexual abuse case need not be "destructive or violent" or otherwise of a particular nature or severity. It is possible, however, that the Tenth Circuit in <u>McCan v. Byron L. Rosquist, D.C., P.C.</u> was

treating sexual abuse as per se destructive or violent.  In any case, the Court is reluctant to read the Tenth Circuit's handling of force in sexual abuse cases as changing or eliminating the "destructive or violent" requirement for other crimes of violence.

The Court believes that the statute in United States v. Perez-Vargas is distinguishable from the Indiana statute at issue here.  Unlike the Colorado statute at issue in United States v. Perez-Vargas, Indiana Code § 35-42-2-1.3 cannot be violated without "touching" in a "rude and insolent manner" that "causes bodily injury." The Colorado statute for third-degree assault under Colorado law provides that third-degree assault occurs "when the defendant knowingly or recklessly **causes bodily injury** to another person or with criminal negligence he **causes bodily injury** to another person by means of a deadly weapon," but the statute does not, like the Indiana statute, require "touching" in a "rude and insolent manner."  The Tenth Circuit listed various examples of conduct that would not violate the Colorado statute: "recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals."  United States v. Perez-Vargas 414 F.3d at 1285-86 (emphasis in original and internal quotations omitted).

The "touching" element in Indiana appears to satisfy the "mechanical" requirement, and the manner and bodily injury elements satisfy the "destructive" or "violent" requirement. The Indiana Code requires both a touching in a rude and insolent manner, and that such a touching result in bodily injury.  The Court concludes that, under Indiana law, the offense of domestic battery contains use of force as an element of the offense.  The crime of domestic battery under Indiana law criminalizes both the manner by which the battery is committed and not just "the harm caused" by the battery.  United States v. Rodriguez-Enriquez, 2008 WL 624433 at * 5.  Moreover, while "touching" appears to satisfy the "mechanical" requirement of United States v. Rodriguez-Enriquez,

the bodily injury requirement, in a particular manner, satisfies the requirement of "violent" or "destructive" that the Tenth Circuit has mentioned in at least two cases.  It is difficult to imagine a touching in a "rude" manner that causes bodily injury, without the touching being mechanical or not destructive.

The crime of domestic battery under Indiana law contains use of  physical force as an element.   The Court can say that it is a crime of violence per se.  While the Court is reluctant to add a word that Congress did not add, the Tenth Circuit has defined crime of violence to require that the physical force be  "violent," "destructive," and "mechanical." Nevertheless, the Court believes the Indiana statute satisfies these elements.  The Indiana domestic-battery statute criminalizes the use of physical force upon a person <u>and</u> not just the result of that force.  The Indiana domestic-battery statute thus requires physical force as an element.  Thus, violation of the Indiana domestic-battery statute is thus per se a crime of violence.

### III.    THE APPROPRIATE <u>SHEPARD V. UNITED STATES</u> DOCUMENTS DEMONSTRATE THAT MOYA-MATUTE'S CONVICTION UNDER INDIANA CODE § 35-42-2-1.3 IS A CRIME OF VIOLENCE.

If a statute of conviction is ambiguous, the Court may look to the charging document, plea agreement, plea colloquy, or comparable judicial records.  <u>See</u> <u>Shephard v. United States</u>, 125 S.Ct. at 1262.  The Tenth Circuit in <u>United States v. Perez-Vargas</u> stated that, "when determining whether a prior conviction resulting from a guilty plea is a violent felony, a court is limited to an examination of the language of the statute of conviction, and, if it is ambiguous, 'the terms of the charging document, the terms of a plea agreement or transcript of the colloquy between judge and defendant . . . or to some comparable judicial record of this information.'" <u>United States v. Perez-Vargas</u>, 414 F.3d at 1284 (quoting <u>Shepard v. United States</u>, 125 S.Ct. at 1262).

Here, the Court's review of the appropriate <u>Shepard v. United States</u> documents supports the

finding that Moya-Matute's conviction for domestic battery under Indiana law is a crime of violence.  According to the Information filed against Moya-Matute:

> On or about May 17, 2001, in Marion County, State of Indiana, the following named defendant, Oscar Moya, did knowingly in a rude, insolent or angry manner touch, Ingris Rivera, another person who is or was the spouse of the Defendant, is or was living as if a spouse of the Defendant, or has a child in common with the Defendant, and further that said touching resulted in bodily injury to the other person, specifically slapped her in the face and punched her in the leg.

Addendum to the PSR (dated February 14, 2008) at 3, Information (filed May 18, 2001).  Moya-Matute contends that the United States must prove the resulting bodily injury, and that his actions of slapping or punching the victim in the leg is not a description of the victim's bodily injury and thus his crime cannot constitute a crime of violence.  See Tr. at 16:22-17:16 (Court & Johnson). Moya-Matute contends that the charging document only described "the action that [he] allegedly took but [did] not describe the bodily injury that resulted to the alleged victim."  Id. at 6:2-4 (Johnson).

Moya-Matute's argument confuses what Indiana had to prove in 2001 and what the United States has to prove today. The information in Moya-Matute's Indiana conviction charges him with a "touching result[ing] in bodily injury to the other person, specifically slapp[ing the victim] in the face and punch[ing] her in the leg."  Addendum to the PSR (dated February 14, 2008) at 3, Information (filed May 18, 2001). Indiana had to prove that there was bodily injury; the United States has to prove only that there was physical force, not that there was bodily injury.  The Court's acknowledgment that one of the elements of Indiana's crime of domestic battery is the presence of bodily injury was not to lay another requirement of proof on the United States, but to help conclude that it is difficult to imagine a situation where there is a touching in a rude, insolent, or angry manner, resulting in bodily injury that would not involve physical force, although the Indiana statute

has physical force as an element.

Moya-Matute's actions involved use of physical force, in a rude, insolent or angry manner, resulting in bodily injury. The Court rejects Moya-Matute's argument that the United States must prove the level of resultant injury beyond "destruction" or "violence" to the victim, because under the categorical approach, the Court need determine only whether the charging documents charged Moya-Matute with "the use, attempted use, or threatened use of physical force against the person of another." United States v. Martinez-Hernandez, 422 F.3d at 1086-87. The Court is not required to evaluate the level of harm suffered by the victim as long as it concludes that the harm was "destructive or violent."

Accordingly, the federal Court need not determine whether Moya-Matute's slapping and punching caused bodily injury. The state court already found that there was bodily injury, and the federal court need not repeat that determination. The federal Court need determine only whether the slapping and punching constituted physical force, which means the force was mechanical and violent or destructive.

Because the Court cannot imagine how slapping and punching would not constitute physical force particularly if done in a rude or insolent manner, and because those actions indicate "the presence of [a] mechanical impact that defines when force is physical," the charging documents support a finding of a crime of violence because those actions constituted physical force. United States v. Rodriguez-Enriquez, 2008 WL 624433 at * 4). The Court believes that the Information demonstrates that Moya-Matute used physical force against the victim that was "destructive or violent." United States v. Venegas-Ornelas, 348 F.3d at 1275; United States v. Quijada, 2005 WL 2093036 at *7. Moya-Matute agreed that he caused bodily injury, and slapping and punching in a rude and insolent manner is, in the Court's judgment, a violent act. Moreover, Moya-Matute's

-32-

conduct included "the presence of [a] mechanical impact that defines when force is physical."

United States v. Rodriguez-Enriquez, 2008 WL 624433 at *4. Moya-Matute's Indiana conviction

charges him with a "touching result[ing] in bodily injury to the other person, specifically slapp[ing

the victim] in the face and punch[ing] her in the leg."  Addendum to the PSR (dated February 14,

2008) at 3, Information (filed May 18, 2001). In United States v. Rodriguez-Enriquez, the Tenth

Circuit stated that, "[w]hen someone is struck by a fist . . . we have no difficulty in characterizing

the force against the person as physical."  2008 WL 624433 at *4.  Thus, Moya-Matute's conduct

indicates the manner in which he inflicted harm -- mechanical impact of "[k]inetic energy . . .

transferred to the body of [his] victim."  2008 WL 624433 at *4.

    **IT IS ORDERED** that the objection contained within Defendant's Objection to the Pre-

Sentence Report and Motion for Variance Pursuant to 18 U.S.C. § 3553(a) to ¶ 12 of the PSR is

overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
Kimberly A. Brawley
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Erlinda O. Johnson
Albuquerque, New Mexico

    *Attorney for the Defendant*